UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICIA LALLIE CISNEROS,

Plaintiff,

v.

MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[1]

Defendant.

Case No. 1:23-cv-00648-HBK

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY[2]

(Doc. Nos. 18, 20)

Patricia Lallie Cisneros seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 18, 20, 21). For the reasons stated, the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion for summary judgment, and affirms the Commissioner's decision.

[1] This action was originally filed against Kilolo Kijakazi in his capacity as the Commissioner of Social Security. (*See* Doc. No. 1). The Court has substituted Martin O'Malley, who has since been appointed the Acting Commissioner of Social Security, as the defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 6).

## I. JURISDICTION

Plaintiff protectively filed for supplemental security income on January 31, 2019, alleging a disability onset date of September 30, 2017. (AR 343-53). Benefits were denied initially (AR 95-113, 132-36) and upon reconsideration (AR 114-31, 140-44). Plaintiff appeared for a telephonic hearing before an administrative law judge ("ALJ") on April 18, 2022. (AR 56-82). Plaintiff testified at the hearing and was represented by counsel. (*Id.*). The ALJ denied benefits (AR 15-45) and the Appeals Council denied review (AR 1-6). The matter is before the Court under 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 44 years old at the time of the hearing. (*See* AR 58). She completed eleventh grade. (AR 425). She lives with her children aged 28, 11, and 8. (AR 70). She has no past relevant work history. (AR 65, 77). Plaintiff testified she is unable to work because she "always" has pain in her back, leg, shoulder, and right hip from a car accident; and she has short term memory loss after the accident. (AR 67). She can only sit for an hour and a half before she must get up to stretch, she cannot stand for more than 15 minutes, and she cannot bend down without pain in her back. (AR 67). Plaintiff reported she uses a cane "most of the time" and also uses a walker. (AR 67-68). She could sit in an office chair for 30 minutes before she would have to stretch for a couple of minutes, and she is unable to lift a gallon of milk with her right arm. (AR 73, 74). She has pain in the back of her neck, and her back "mostly" that goes down to her right leg. (AR 73). Plaintiff testified that she has memory problems, has to write down appointments, will forget recent conversations, asks the same questions repeatedly, and won't remember parts of a movie she watched the next day. (AR 74-76).

////

////

////

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence e" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the

claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 31, 2019, the application date. (AR 21). At step two, the ALJ found that Plaintiff has the following severe impairments: disc herniations, disc bulge, degenerative disc disease, and left-sided L5 transverse process fracture of the lumbar spine with radiculopathy; degenerative disc disease, spondylosis, disc herniations, stenosis of the cervical spine; degenerative disc disease, Schmorl's nodes, disc desiccation, and disc protrusion of the thoracic spine; mild degenerative joint disease of the left knee; obesity; psychotic disorder; and depressive disorder. (AR 21). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 22). The ALJ then found that Plaintiff has the RFC to

> perform reduced range of light work as defined in 20 CFR 416.967(b) in that the claimant can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. She can stand and/or walk 4 hours and sit up to 8 hours of an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. Mentally, she is limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks, defined specifically as those job duties that can be

learned in up to 30 days' time.

(AR 25). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 34). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including storage facility rental clerk, sewing machine operator, and price marker. (AR 34-35). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since January 31, 2019, the date the application was filed. (AR 35).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the assessed RFC is supported by substantial evidence;
2. Whether the ALJ erred at step five; and
2. Whether the ALJ failed to fully develop the record.

(Doc. No. 18 at 10-18).

## VII. DISCUSSION

### A. RFC / Medical Opinion

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of

an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id*. at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

In September 2019, state agency reviewing physician Stephanie Fearer, Ph.D. rated Plaintiff's understanding and memory limitations as follows: "[claimant] would have occasional but not frequent difficulty remembering detailed instructions. She is capable of understanding and remembering simple, one and two-step instructions, work-like procedures, and locations." (AR 126). As to limitations on plaintiff's sustained concentration and persistence, Dr. Fearer opined that Plaintiff "is able to carry out simple instructions with occasional interruption to her ability to maintain sustained concentration and complete a normal workday/week without interruption from symptoms." (AR 127). Finally, under the "additional explanation" section of her opinion, Dr. Fearer noted "the totality of the evidence suggests the claimant retains the ability to perform simple, routine work." (*Id.*). The ALJ reviewed all of these findings and found Dr. Fearer's opinion was "generally persuasive." (AR 32).

Plaintiff argues that the RFC is not supported by substantial evidence because despite finding Dr. Fearer's opinion persuasive, he did not account for the opined limitation to "simple one to two-step instructions, work like procedures, and locations." (Doc. No. 18 at 10-11). An ALJ's failure to either provide reasons supported by substantial evidence to reject the limitations opined by the state agency consultant, or to properly incorporate them into the assessed RFC, constitutes error. *See Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations"). Defendant contends that "[b]ecause Dr. Fearer clearly found that Plaintiff could perform simple tasks, which included one to two-step tasks, the ALJ appropriately found that Plaintiff could perform simple tasks." (Doc. No. 20 at 9-10 (citing, e.g., *Corwin v. Kijakazi*, 2021 WL 5771658, at *4 (E.D. Cal. Dec. 6, 2021) ("if Plaintiff can perform not only simple one to two step tasks but also simple and routine tasks, it is appropriate for the RFC to reflect the latter")). The Court agrees.

As noted by Defendant, a claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." (Doc. No. 20 at 8); 20 C.F.R. § 416.945(a). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's

RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity."). Here, the ALJ considered both the limitation to one-to-two step tasks and the limitation to simple, routine work opined by Dr. Fearer, found her ultimate conclusion that Plaintiff could perform simple work was persuasive, and properly incorporated that well-supported limitation into the assessed RFC. (AR 32). Thus, the Court finds no error in the ALJ's assessment of the mental RFC to the extent it incorporated limitations opined by Dr. Fearer. *See Bayliss*, 427 F.3d at 1217.

**B. Step Five**

In the alternative, Plaintiff argues that even if the ALJ did not err in assessing the RFC, the ALJ was required to resolve an apparent conflict between the limitation to "one and two-step tasks" and the vocational expert (VE) testimony that Plaintiff could perform the jobs of sewing machine operator, price marker, and storage facility rental clerk. (Doc. No. 18 at 12-13). At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran*, 700 F.3d at 389. The Commissioner can meet this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). If the hypothetical does not reflect all the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

In addition, the occupational evidence provided by a vocational expert should be consistent with the Dictionary of Occupational Titles ("DOT"). *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). "The [DOT], a resource compiled by the Department of Labor that details the specific requirements for different occupations, guides the analysis. If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listing in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled. . .. For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent. That means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016) (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)); *see also Martinez v. Colvin*, 2015 WL 5231973, at *4 (E.D. Cal. Sept. 8, 2015) ("An example of a conflict between the DOT and a VE's testimony is when the DOT's description of a job includes activities a claimant is precluded from doing, and the VE nonetheless testifies the claimant would be able to perform that job."). The ALJ may rely on VE testimony that conflicts with the DOT as long as there is "persuasive testimony" to support the deviation. *Massachi*, 486 F.3d at 1153 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Here, the vocational expert ("VE") testified that a hypothetical individual of Plaintiff's age, education, work experience, and residual functional capacity could perform the requirements of representative jobs such as storage rental facility clerk (DOT 295.367-026), sewing machine operator (DOT 786.685-030), and price marker (DOT 209.587-034). The ALJ asked the VE at the hearing if anything in her testimony was inconsistent with or not addressed by the DOT "in any way." (AR 80-81); *see Massachi*, 486 F.3d at 1153 ("SSR 00-4p further provides that the adjudicator 'will ask' the [VE] 'if the evidence he or she has provided' is consistent with the [DOT]"). Based on the VE testimony, the ALJ concluded at step five that "considering [Plaintiff's] age, education, work experience, and [RFC], [she] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (AR 35). As an initial matter, Defendant concedes the ALJ erred in failing to resolve an apparent

conflict between the limitation to simple work and the demands of the occupation storage facility rental clerk, because it requires Level 3 reasoning. (Doc. No. 20 at 11 (citing *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (finding apparent conflict between demands of Reasoning Level 3 occupation and an RFC limitation to simple work)). However, as argued by Defendant, this error is harmless because the ALJ identified two other jobs that constitute significant numbers in the national economy. (*Id.*); *see Buck v. Berryhill*, 869 F.3d 1040, 1051 & n.2 (9th Cir. 2017) (error may be harmless if VE has identified other jobs that claimant could do and there are a significant number of these jobs in the national economy); *Hernandez v. Berryhill*, 707 F. App'x 456, 458-59 (9th Cir. 2017) (finding any error at step five in considering two jobs was harmless because ALJ properly determined Plaintiff could perform one job identified by the VE that existed in significant numbers in the national economy).

The "Ninth Circuit has repeatedly indicated that the ability to perform 'simple' work corresponds with Reasoning Level 2 abilities"; accordingly, "courts also indicated there is not a conflict between simple work and Reasoning Level 2." *Cervantes v. O'Malley*, 2024 WL 1173827, at *4 (E.D. Cal. Mar. 19, 2024) (collecting cases). As discussed in detail above, the ALJ's RFC limiting Plaintiff to "simple work" is supported by substantial evidence. Thus, the Court finds no apparent conflict between the assessed RFC and the Reasoning Level 2 requirements of the sewing machine operator and price marker jobs identified by the VE. Based on the foregoing, it was reasonable for the ALJ to rely on the VE testimony to support the finding at step five that there are jobs in significant numbers in the national economy that Plaintiff can perform, including sewing machine operator and price marker. The Court finds no error at step five.

**C. Duty to Develop**

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)) (internal quotation marks omitted). This duty is "triggered when the evidence is ambiguous or when the record is inadequate to allow for

proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *Thomas*, 278 F.3d at 958. However, the plaintiff bears the burden of presenting evidence in support of her alleged disability. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff argues the ALJ's duty to develop the record was "triggered" by the "ambiguous" report from the consultative examining psychologist Michael Musacco, Ph.D. (Doc. No. 18 at 13-18). In April 2019, Dr. Musacco examined Plaintiff and noted she was "exceptionally confused to the extent that [he] was concerned that she was intoxicated," had difficulty providing historical information, offered long pauses in response to basic and simple questions, and her eyes would close for long periods of time as if she were "nodding off." (AR 1139-40). Dr. Musacco concluded that Plaintiff

> appeared to be under the influence of a substance. She was unable to respond meaningfully to questions and she appeared to be nodding off on multiple occasions. The test results were invalid due to her confused cognitive state… The undersigned was presented with a list of referral questions. However, I do not believe that I obtained valid data which would enable me [to] address these questions. If the claimant is found eligible for disability benefits, I would recommend that a payee be provided out of an abundance of caution.
>
> I understand that these findings are unusual – it is rare for me to suspect that a claimant is intoxicated during an interview. Ultimately, I had no way to confirm this suspicion or reach a definitive diagnosis. However, I am convinced that the test results are invalid and I do not believe that the claimant was malingering or intentionally exaggerating.

(AR 1142-43). Under the "Diagnosis (DSM-5)", Dr. Musacco listed "Rule Out Other (or Unspecified) Substance Intoxication" and "Unspecified Schizophrenia Spectrum Disorder (Provisional)." (AR 1142). The ALJ considered the only limitation arguably opined by Dr. Musacco—that Plaintiff be provided with a representative payee if benefits are awarded—and found that even it was not persuasive because Dr. Musacco "noted that he did not consider the information he obtained to be valid. Therefore, he is not in a good position to even determine whether a representative payee is appropriate." (AR 32).

////

////

////

Plaintiff does not make any argument as to the ALJ's evaluation of Dr. Musacco's opinion under the new regulations; rather, she contends the ALJ had a duty to develop the record triggered by the "ambiguous" consultative examination by Mr. Musacco.[3] (Doc. No. 18 at 15-18). As an initial matter, in support of her argument, Plaintiff cites notations at the initial and reconsideration levels that a consultative examination (CE) was "required" in order to establish the severity of Plaintiff's impairments, along with narrative findings on reconsideration that the CE examination was "bizarre" and the reason for the "odd behavior is still in question" since Plaintiff denied intoxication but nonetheless opining that "[g]iving the claimant the benefit of the doubt initial decision of simple work is adopted." (*Id.* at 16-17 (citing AR 101, 110, 122). Defendant contends the "fact that two consultants were able to assess mental limitations based on the record establishes that the record before the ALJ was adequate, and further development was not required." (Doc. No. 20 at 14). Regardless, as noted above, Plaintiff does not argue that the ALJ improperly considered either of the state agency opinions. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

Here, state agency consultants Daniel Walter, Psy.D. and Stephanie Fearer, Ph.D. considered all the evidence of record, including Mr. Musacco's opinion, and opined that Plaintiff was capable of simple work. (AR 101-10, 120-27). In considering both state agency opinions, the ALJ found Plaintiff's "mental conditions appear to have been stable during the period under review in this case. However, given her history of mental treatment and her very recent

---

[3] Defendant argues "caselaw is clear that a claimant's failure to cooperate with a consultative examination results in a negative inference, not further development." (Doc. No. 20 at 12). In support of this argument, Defendant cites case law that the ALJ may consider a plaintiff's failure to cooperate or give "maximum" effort on examination when evaluating his or her subjective complaints. (*Id.*). However, as argued by Plaintiff, there is "no conclusive evidence that [Plaintiff] was intoxicated or was failing to comply with the CE." (Doc. No. 21 at 2). Moreover, the cases cited by Defendant are arguably distinguishable from the instant case because Plaintiff does not challenge the ALJ's finding regarding Plaintiff's symptom claims. Regardless, as discussed above, Dr. Musacco's "inconclusive" examination findings did not, in and of itself, trigger the ALJ's duty to develop the record.

complaints of increasing memory difficulty, I find this opinion reasonably well supported and consistent with the evidence and persuasive." (AR 31-32). While not challenged by Plaintiff, the Court notes the ALJ's finding that the state agency opinions are persuasive is supported by substantial evidence after proper consideration under the new regulations. *See* 20 C.F.R. § 416.920c(c).

Plaintiff additionally argues, without citation to legal authority, that the provisional diagnosis of "unspecified schizophrenia spectrum disorder (provisional)" assessed by Dr. Musacco is "indicative of an 'ambiguity' of evidence as it means that the provider needs further information to make diagnosis." (Doc. No. 18 at 15 (citing AR 1142)). However, district courts in this circuit have found that a provisional or "rule-out" diagnosis, standing alone, does not trigger the ALJ's duty to develop the record. *See Crawford v. Colvin*, 2014 WL 2216115, at *5 (W.D. Wash. May 29, 2014) (finding no error in developing the record where ALJ relied on state agency reviewing opinions that considered the provisional diagnosis along with other evidence of record and "[i]n light of that evidence, the ALJ did not find the record either ambiguous or inadequate."); *Brown v. Berryhill*, 2017 WL 3895555, at *2 (D. Or. Sept. 5, 2017) ("Even if the provisional diagnoses suggested a lack of unanimity regarding the most appropriate diagnostic impression, the record as a whole made both the nature and severity of [plaintiff's] functional limitations from mental impairments reasonably clear."); *Gille v. Astrue*, 2011 WL 4406317, *18 (D. Or. June 16, 2011) (noting physician's "discomfort with opining about the functional effects of [plaintiff's] psychological conditions does not imply that existing psychological evidence was insufficient for the ALJ to assess [plaintiff's RFC]").

Plaintiff argues there is "considerable subjective and objective evidence documenting [Plaintiff's] significant issues with memory, thus requiring proper testing and evaluation of intellectual functioning." (Doc. No. 18 at 16). However, aside from diagnoses of "memory changes" and "memory impairment" at two treatment visits, Plaintiff supports this argument by citing her own testimony at the hearing regarding her short-term memory loss and two reports to treatment providers that she is forgetful. (Doc. No. 18 at 16-17 (citing AR 67, 74, 76-77, 1567-68 (reporting "now people are getting upset with her as she repeats herself), 1678-79)). The ALJ

offered clear, convincing, and entirely unchallenged reasons for discounting Plaintiff's symptom claims. (AR 26-29). Moreover, the ALJ found Plaintiff's medical providers "have generally noted good mental status findings overall" (*See*, e.g., AR 1156, 1166, 1197, 1385, 1407, 1570, 1684), and the ALJ specifically noted that while Plaintiff did report some memory loss at one appointment in 2021, she was "able to adequately communicate her needs with her providers" and her mental status examination at the same visit "showed no significant deficits." (AR 29, 1222, 1567-68).

Here, the ALJ did not find, and the Court is unable to discern, any inadequacy or ambiguity that did not allow for proper evaluation of the record as a whole. Rather, the ALJ properly relied on two prior administrative findings, as discussed above, and 1100 pages of medical records and treatment notes regarding Plaintiff's claimed impairments, including the handful of records pertaining to Plaintiff's claims of memory loss. Thus, the record was sufficient for the ALJ to make a non-disability determination, and the ALJ did not err by failing to further develop the record regardless of Dr. Musacco's suspicion of intoxication in his examination findings and ultimate inability to assess functional limitations. *See LeBeouf v. Saul*, 2020 WL 5702240, at *10-11 (E.D. Cal. Sept. 24, 2020) (ALJ was not required to request a consultative examination in part because the "record contained what appears to be Plaintiff's complete treatment records, which supported the ALJ's finding and did not present an ambiguity or inadequacy.")

## VIII. CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly assessed the RFC, did not err by failing to develop the record, and did not err at step five. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 18) is DENIED.

2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 20) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.

3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated: July 3, 2024

Helena M. Barch-Kuchta

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE